IN THE UNITED STATES' DISTRICT COURT
DISTRICT OF NEW JERSEY

CIVIL ACTION NUMBER:

PRECIOUS OKEREKE AND )
)
CHUKWUMA E. AZUBUKO - )
Plaintiffs )
)
vs. )
)
ARBELLA MUTUAL INSURANCE )
COMPANY AND )
)
COVERALL INSURANCE ANGENCY - )
Defendants )

**COMPLAINT**

## COUNT ONE

The Plaintiffs would seriously prayed the Defendants not to waste time of the *necessary parties* and the Court motioning on lack of jurisdiction under the color of the Fed. R.Civ. P. 12. The Court had resoundingly general jurisdiction – subject matter and specific jurisdiction. [Article III (Section 2); Fed. R. Civ. P. 4 (e), (i) and (k); 15 USC Sections 4, 9 …; 28 USC Sections 1331, 1337, 1349, 1357 and 1367; 42 USC Section 1981; The Clayton Antitrust Act (1914); The Sherman Antitrust Act (1890) and McCarran-Ferguson Act (15 USC Section 1011-15); Federal Trade Commission Act; Massachusetts' General Law Chapter (M.G.L.c.) 93A] Excerpts in that respect were abound thus:

"The national contacts doctrine provides that in federal cases, the court has personal jurisdiction over defendants when there is a statutory provision for nationwide service of process and defendants have sufficient contacts with United States, not the state in which the federal court sits. *Federal Trade Commission v. Jim Walter Corp.*, 651 F.2d 251, 256-57 (5th Cir. Unit A July 1981)."

"As with every case, we begin with the jurisdictional issues. The district court determined that Section 1132(e)(2) of ERISA provided it with the authority to exercise jurisdiction over the deSotos since the plan was administered in Ohio. Section 132(e)(2) provides, 29 U.S.C. Section 1332(c)(2). That section, the court ruled, alters the personal jurisdiction calculus established by *International Shoe Co. v. Washington*, 326 U.S. 310

(1945). Rather than asking whether the defendant has sufficient minimum contacts with the forum state for the exercise of jurisdiction to comport with traditional notion of fair play and substantial justice, as courts do when relying on a state's long-arm statute to establish territorial jurisdiction, a court should ask whether the defendant has sufficient minimum contacts with the United States. Because the deSotos had sufficient minimum contacts with the United States, the court concluded its exercise of jurisdiction over them comported with traditional notions of fair play and substantial justice." [*Medical Mutual of Ohio v. Denise deSoto; Jose deSoto* (Sixth Circuit) Nos. 99-3988 and 00-3571]

"In addition to the district court in the case at bar, a number of districts in this circuit have concluded that an independent due process analysis is required in cases involving nationwide service of process provisions and domestic corporations. *See, e.g., Willlingway Hospital, Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F.Supp. 1102, 1107 (S.D.Ga. 1994); *Duckworth v. Medical Electro-Therapeutics, Inc.* 768 F.Supp. 822, 830 (S.D.Ga. 1991); *Cannon v. Gardner-Martin Asphalt Corp. Retirement Trust-Profit Sharing Plan*, 699 F.Supp. 265, 267-68 (M.D.Fla. 1988)]

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. Section 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a). *See Klein v. Drexel Burnham Lambert*, 737 F.Supp. 319, 323 n. 11 (E.D. Pa. 1990). In this case, the district court did not have any of the three types of subject-matter jurisdiction. *Baltin v. Alaron Trading Corp.* (11th Circuit) (No. 96-5123)."

## COUNT TWO

Speaking under subject to correction, the Plaintiffs had taken out auto insurance contract with Defendants since the earliest part of 2001. The auto insurance was on their co-owned 2000 Honda CRV. The Plaintiffs' insurance coverage on the car ranged from March 28th, 2004 to March 28th, 2005. [Exhibit 1] The cost per year was $2,536.00. The balance was $118 at the time of cancellation. The Plaintiffs received the Defendants' premium bill with cancellation date or deadline as December 26th – 2004. [Exhibit 2] The second Defendant sent post-card reminder: the photocopy of the back and front would be tendered. [Exhibit 3] Of course, most businesses never opened on December 25th for being a Christmas. December 26th – 2004 was a Sunday. Even December 24th was not a full business day, all things being equal. Perhaps, the second Defendant was not opened. The first Plaintiff with a check of the second Plaintiff went to the second Defendant's office at Jamaica Plain, Massachusetts with a part-payment of the $514.00 originally. The second Defendant's employee/manager objected to the part-payment.

The first Plaintiff put the employee/manager on the telephone to speak with the second Plaintiff. The second Plaintiff thought of authorizing the first Plaintiff to alter of the check's amount, but the second Defendant's employee deemed it commercially unsound. The second Plaintiff agreed with her and requested the first Plaintiff to return home and picked up another check for the specified amount - $514.00. [Exhibit 4] On getting there with the check for $514.00, the second Defendant's employee informed first Plaintiff that the insurance had been cancelled. Therefore, the premium payment would not be accepted. The Defendant (2) wrote a letter dated December 28th, 2004 disclosing its intention to transfer the Plaintiffs' policy to Commerce Insurance. [Exhibit 5] But, what underscored the transfer measure? Was the Defendant going out of business? No! The Defendants' conduct qualified for ethnic or gender discrimination. The first Plaintiff contacted the second Plaintiff on the telephone and it was agreed that the check should be left with the second Defendant's employees. Surprisingly, the check was returned to the Plaintiffs by mail. [*See* Exhibit 4]

## COUNT THREE

The ugly scenarios centered on "*but for*" doctrine. The Plaintiffs had another car the Defendants ensured. When the deadline was specified on a working day, the Plaintiffs would do their best to meet it. Money was not water [these days] The Plaintiffs were not drug-dealers, so as to have much unneeded *disposable income*. Front and back notice cancellation photocopy would be tendered. [Exhibit 6] From that, it would not be illogical to conclude that if the other car's premium payment deadline had not been set on a Sunday or a non-business day, the insurance policy would not have been cancelled. The syllogism was not improper or unreasonable. That represented an "Unfair practices; legislative intent; rules and regulations" in keeping with the Massachusetts' law. [M.G.L.c. 93A Section 2]

## COUNT FOUR

At the time of cancellation, the Defendants took unconscionable advantages of the Plaintiffs. In short, they cheated the Plaintiffs in the transaction. The Defendants owed the Plaintiffs a sum of $520.65. The bases of the computation were thus:

Step 1:    The insurance coverage lasted for 273-day;
Step 2:    The annual insurance premium was $2,536.00;

Step 3:    If divided by 365-day, the daily insurance cost was $6.947/$6.95.

Step 4:    Then, $6.95 x 273-day = $1,897.35.

Step 5:    Evidently, the Defendants acknowledged that the rejected $514.00 had been seen as money the Plaintiffs would not be responsible for. The Defendants reported or disclosed that the amount outstanding was $118.00 when the Plaintiffs contacted other insurance companies on Friday – January 28th - 2005. [*See* Exhibit 2]

Step 6:    Factly, the balance premium was $118.00, it should be subtracted from the annual premium - $2,536.00.

Step 7:    Then, what the Plaintiffs paid was $2,418.00.

Step 8:    Therefore, step 4 applied – subtraction of $1,897.35 from $2,418 = $520.65.

## COUNT FIVE

Indeed, when an auto insurance policy was cancelled, one encountered a great deal of hardship to have it re-insured. The Defendants were responsible to the Plaintiffs' hardship in that regard. Presently, other insurance companies demanded paying off the $118.00 premium balance with the Defendants. Additionally, the premium was higher – about $3,000 - and should be paid in bulk or at the same time.

## COUNT SIX

When the Plaintiffs contacted the first Defendant's employees, they negligently rationalized what was commercially immoral, discriminatory and infeasible. Well, "the ability to thinking critically has been likenable to a briefcase, because everybody goes with hers/his." They really stuck to their guns that the deadline for the premium payment was Sunday - December 26th 2004 despite the fact that the office was unopened. The common law computation or even the Massachusetts' R. Civ. P. 6(a) entitled "Time" and sub-titled "Computation." markedly deviated from their questionable reasoning. [Exhibit 7] "If inherited properties were shared in the dark, it would appear if the primogeniture law was the basis for the allocation." [Proverb] The truth could be tested: the Plaintiffs subscribed not for trial rather litigation by ambush. Without circumlocution, the Plaintiffs emphatically argued that if a deadline fell on a Sunday, the next business day

would be the actual deadline. That was likenable to the seeds that fell on the stone – it made no sense to them.

### COUNT SEVEN

The Defendants employees were sheepish on deadline's computation. The same thing applied to the owner of the insurance agency – Mr. White. He was talking about "… insurance companies and Sunday law …" He equally advised the second Plaintiff over the telephone to get himself a Lawyer when the second Plaintiff intimated him with his intention to commence proceeding over the dubious transaction or contract. He should tell that to the marines! He was not open on Sunday – December 26th – 2004. Sunday's law in Massachusetts – hinged on non-selling of liquors – had been mitigated or constructively repealed. In essence, liquor stores could sell liquor on Sundays. That never meant that Sunday had been recognized as an official business day in Massachusetts. It would be crass crude to do so in Massachusetts, United States. The Defendant's created a deadline, but unavailable for those whom the deadline would affect adversely. That would be delusional. Hopefully, the Defendants would not argue that they heard an unknown voice to act childishly. They deprived the Plaintiffs *"liberty of contracts"* of the Fifth Amendment knowingly, though not specifically stated as in the 14th Amendment. Whatever the 14th Amendment provided for the States or government-sector, the Fifth Amendment provided for the private-sector. Truly, the Defendants acted ignorantly, irresponsibly and uncommercially. It defied logic that those who ought to know, when tested by accident manifested knowing nothing – *tabular razor* (blank slate) – anybody could write upon. Such an ignorant approach to commercial activities could be very dangerous if they condemned some carefree individuals to the self-same ordeals they condemned the Plaintiffs to. "If God slept, one eye would be opened." They created unnecessary financial problems for the Plaintiffs: they could not be conscious of that, but they really caused mountainous problems.

### COUNT EIGHT

The Defendants' conduct had bearings on *representation* and *equitable estoppel*. Certainly, including Sundays or days their offices were closed in their computation of deadlines were electrifying and commercially immoral: if it were included in its insurance policy, it was an *unfair exclusion* clause. Central to common law, when such

prevailed, it would be interpreted against the originator of the *unjust enrichment* and *unconscionable* exclusion clauses, thus *contra proferentem* rule.[1]

## COUNT NINE

The only reason the Defendants adduced for non-accpetance of the premium was that it was paid after the deadline. It should be noted that in the past, the Defendant (2) had accepted payment from the Plaintiffs after deadline expiration. They justified it by saying that the cancellation was not effected immediately by the first Defendant. In essence, there existed grace period and the Defendants refused the benefit to the Plaintiffs. Again, *representation* and *equitable estoppel* applied. That equally violated the anti-trust law. [15 USC Section 1] That applied to the Massachusetts' law on consumers' protection. [M.G.L.c. 93A *supra*]

## COUNT TEN

The Defendants conduct would not be dissociated from [*gross*] *negligence*. Harper, James and Gray, "The Law of Torts," Second Edition, Volume 3 and Section 16.1 defined negligence in keeping with the Restatement of Torts, thus:

> "Conduct, which falls below the standard established by law for protection of others against unreasonable risk of harm. State of mind of indifference or inadvertence mental quality requirement must be met. Negligence resulted from ignorance, stupidity, bad judgment, timidity or forgetfulness. Negligence resulted from deficiencies in knowledge, memory, observation, imagination, foresight, intelligence, judgment, quickness of reaction, deliberation, coolness, determination and courage. Constitution of negligence must reflect "voluntary" conduct – conscious manifestation of the actor's will. Knowing that one's conduct involves a substantial chance of injuring person or property of others."

## COUNT ELEVEN

The Defendants' conduct amounted to conduct causing deprivation. It would not be disconnected from retaliation. The Defendants behavior to what triggered off the proceeding appeared unintelligent, in all modesty. The Plaintiffs were precipitated into unjustifiable financial headache. That violated the *impact* rule "intentional infliction of emotional distress," "negligent infliction of emotional distress," also known as "zone of danger," "negligent infliction of emotional distress: bystander recovery" and "negligent infliction of emotional distress: recovery without proof of physical harm." The

---

[1] "It is the ...., according to which any ambiguity in a clause is interpreted against the party seeking to rely on it ..." McKendrick, Ewan, "Contract Law," Second Edition, p. 150.

Defendants conduct was a commercial immorality and it culminated into *near-moral turpitude*. Factly, the Plaintiffs conscience was shocked and that had been actionable! [*Robertson Oil Co., Inc. v. Phillips Petroleum Co.*, C.A. 8 (Ark..) 1993 14 F.3d 373. Of course, the Defendants killed the Plaintiffs' *liberty of contracts* constitutionally and statutorily. [Fifth Amendment; 42 USC Section 1981]

### COUNT TWELVE

What motivated the Defendants to interfere with the contractual relationship knowingly? Whatever the reason/s defied logic! [*National Sur. Co. of New York v. Cobb*, C.C.C.A. La. 1933, 66 F.2d 232, at page 325, certiorari denied 54 S.Ct. 127, 290 U.S. 692, 78 L.Ed. 595. Whatever roles the first Defendant played were irrelevant. It approved the unlawful and malicious action of the second Defendant when contacted. If its roles were passive, it never meant that the law did not attach over its insidious and invidious reticence. By and large, it typified "tacit agreement." [*Santiago v. City of Philadelphia*, D.C. Pa.1977, 435 F.Supp. 136] Its roles meant "specific acts of collusion" and "overt acts – generally," "injury to person or property - generally," "independent illegality, "intentional act," "malicious aforethought" and "malice in fact." Precedents abound in that regard. [*Harrison v. Common*, 279 Ky 510, 131 S.W.2d 454, 455; *Lyons v. St. Jospeh Belt Ry. Co.*, 232 Mo.App. 575, 84 S.W.2d 933, 944; *Weise v. Reisner*, D.C. Wis. 1970, 318 F.Supp. 580] It would not be dissociated from "Knowing intent to injure; punishment; jurisdiction." [M.G.L.c. 93 Section 10]

### COUNT THIRTEEN

The Defendants rejection of the money meant that the Defendants would not hold the Plaintiffs responsible for the $514.00 auto insurance premium they rejected. The second Defendant's employee wanted to know the source of the law; the second Defendant provided it. Evidently, the Defendant/s believed in it. The Plaintiffs were not the originator or the father! Indeed, it was a Massachusetts' law. The Defendants had forfeited it forever. It was in keeping with Uniform Commercial Code (UCC 3-604] The same applied to the Massachusetts' General (M.G.L.c. 106: Section 3-604] It was entitled: "*Discharge by Cancellation or Renunciation*." The law was modeled upon the *Uniform Commercial Code* hence 3-604. The violation meant that what the Plaintiffs owed the Defendants was the $118.00 - the balance to the premium [as already state]

paying the Defendants the balance was unnecessary, because the Defendants intentionally *breached* the contract or refused to do business with the Plaintiffs. The new auto-insurance policy the Plaintiffs intended to take out expected the balance - $118.00 - be paid off first/ly prior to insuring the Plaintiffs' car. As already pointed out, the Defendants knew that they had no claim on the $514.00 that they knowingly refused to accept; they claimed the balance - $118.00. The Plaintiffs would pay it, if need be, but the Plaintiffs would demand reimbursement via motion.

The Plaintiffs would demand *treble* compensatory and punitive damages from the Defendants as the Massachusetts law specified in that regard – anti-trust - in the amount of $1m respectively. Cost and interest would be excluded. If the Defendants elected to allow the case to go to trial despite the case's *strict liability* nature, the Plaintiffs would demand *jury trial*.

PRECIOUS OKEREKE,
Pro Se.
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone Number: (617) 265 6291.

CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston – MA 02117-1351.
Telephone: (617) 522 9163.

Dated in Boston, Massachusetts, on Thursday – January 27th - 2005

This page and any attached endorsements form a part of your policy

**ARBELLA MUTUAL INSURANCE CO.**

Reason for Coverage Selections Page:
ENDORSEMENT –
APPROVED 2004 RATES

End. No. 061

Massachusetts Personal Automobile Policy Number
**4HB 929 476**

ITEM 1. This policy is Issued To:

PRECIIOUS OKEREKE
106 F MINDEN ST APT 3
JAMAICA PLAIN   MA 02130

Effective Date 3/28/04

Name code OKERE

Producer COVERALL INS AGENCY INC
28 BROOKLEY RD
JAMAICA PLAIN   MA 02130

ITEM 2. This policy is effective from: MAR/28/04 To: MAR/28/05 (12:01 A.M. Eastern Standard Time)

Producer's No. **44-0859**

ITEM 3. Description of your Auto:

AUTO # 1 00 HONDA   CR-V EX   JHLRD1863YS007859

ITEM 4. This policy provides only the coverages for which a premium charge is shown.

| COVERAGES, PARTS 1-12 AUTO # 1 | LIMITS | DEDUCTIBLE | PREMIUM ANNUAL | PREMIUM ADJUSTED | LIMITS | DEDUCTIBLE | PREMIUM ANNUAL | PREMIUM ADJUSTED |
|---|---|---|---|---|---|---|---|---|
| **COMPULSORY INS.** | | | | | | | | |
| 1. Bodily Injury To Others | $20,000 per person / $40,000 per accident | None | $510.00 | $46.00 | $ per person / $ per accident | None | $ | $ |
| 2. Personal Injury Protection | $8,000 per person | NONE yourself / yourself+house hold members | $158.00 | $5.00 | $ per person | yourself / yourself+house hold members | $ | $ |
| 3. Bodily Injury Caused By An Uninsured Auto (COMPULSORY LIMIT $20,000/40,000) | $50,000 per person / $100,000 per accident | None | $22.00 | $4.00 | $ per person / $ per accident | None | $ | $ |
| 4. Damage To Someone Else's Property (COMPULSORY LIMIT $5,000) | $100,000 per accident | None | $455.00 | $25.00 | $ per accident | None | $ | $ |
| **OPTIONAL INSURANCE** | | | | | | | | |
| 5. Optional Bodily Injury To Others | $50,000 per person / $100,000 per accident | None | $168.00 | $-2.00 | $ per person / $ per accident | None | $ | $ |
| 6. Medical Payments | $25,000 per person | None | $20.00 | $-3.00 | $ per person | None | $ | $ |
| 7. Collision | Actual Cash Value | $300 | $780.00 | $44.00 | Actual Cash Value | $ | $ | $ |
| 8. Limited Collision | Actual Cash Value | $ | $ | $ | Actual Cash Value | $ | $ | $ |
| 9. Comprehensive | Actual Cash Value | $300 | $255.00 | $14.00 | Actual Cash Value | $ | $ | $ |
| 10. Substitute Transportation | Up to $45 a day maximum $1350 | None | $146.00 | $ | Up to $ a day maximum $ | None | $ | $ |
| 11. Towing and Labor | Up to $ for each Disablement | None | $ | $ | Up to $ for each disablement | None | $ | $ |
| 12. Bodily Injury Caused By An Underinsured Auto | $50,000 per person / $100,000 per accident | None | $22.00 | $1.00 | $ per person / $ per accident | None | $ | $ |
| **SAFE DRIVER INSURANCE PLAN** | Credit-Step | 15 | $ | $650.00 | Credit-Step | | $ | $ |
| | Surcharge-Step | 15 | $ | $ | Surcharge-Step | | $ | $ |
| | | **PREMIUM** | $2536.00 | $784.00 | | **PREMIUM** | $ | $ |

Identification Numbers of Endorsements Forming a Part of This Policy
645

TOTAL PREMIUM  $ 784.00

AUTO #1   213
DISCOUNTS: P RESTRAINT 25% ANTI THEFT 20%

SEE NOTE 4 ON REVERSE FOR AUTO 1

ITEM 5. Place of Principal Garaging
AUTO # 1 JAMAICA PLAIN MA

ITEM 6. Secured Lender/Lessor-Additional Insured, if Rented Auto
EASTERN BANK 270 UNION ST LYNN MA 01901

**DRIVER INFORMATION**

| Oper No. | Operator Name (First, middle initial, last) | Date of Birth | License Number | Lic. State | Operator Status O=Occasional P=Principal E=Excluded D=Deferred Auto 1 | Auto 2 | Auto 3 | Auto 4 | ADDITIONAL DISCOUNTS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | PRECIIOUS OKEREKE | 07 14 60 | S73086128 | MA | P | | | | |
| 2 | CHUKWUMA AZUBUKO | 03 13 61 | 010668275 | MA | O | | | | |



EXHIBIT 01
REFER TO OTHER SIDE FOR ADDITIONAL INFORMATION

*0008590982*

10AR1172 01/04
AGENT COPY

**Arbella® Mutual Insurance Company**
P.O. Box 4033
WOBURN, MA 01888-4033

Date of this Notice: 12-03-2004

**STATUTORY NOTICE OF CANCELLATION OF THE MASSACHUSETTS MOTOR VEHICLE LIABILITY POLICY**
(Cancellation of Entire Policy)
(This Notice Also Covers Non-Compulsory Coverages)

**Policy Number:** 4HB 929 476

| REGISTRATION NUMBER (Car 1) | REGISTRATION NUMBER (Car 2) |
|---|---|
| 6255PH | |
| **V.I. NUMBER (Car 1)** | **V.I. NUMBER (Car 2)** |
| JHLRD1863YS007859 | |
| **REGISTRATION NUMBER (Car 3)** | **REGISTRATION NUMBER (Car 4)** |
| | |
| **V.I. NUMBER (Car 3)** | **V.I. NUMBER (Car 4)** |
| | |
| **Effective Date of Cancellation** | 12-26-2004 |

Certificate of Mailing No. 93

PRECIIOUS OKEREKE
P O BOX 1351
BOSTON                MA  02117-0000

**Producer:** 44-0859
COVERALL INS AGENCY INC
28 BROOKLEY RD
JAMAICA PLAIN                MA  02130-0000

(Copy was sent to this interest(s))
EASTERN BANK

Specific Reason(s) for Cancellation (Company must specify the particular reason(s) and must state the substance of the matter(s) relied on for cancellation):

NONPAYMENT OF THE INSURANCE PREMIUM FOR THE POLICY IDENTIFIED ABOVE. THIS CANCELLATION WILL NOT TAKE EFFECT IF THE MINIMUM AMOUNT DUE IS PAID ON OR PRIOR TO THE EFFECTIVE DATE OF CANCELLATION.

FULL AMOUNT DUE   $759.00          MINIMUM AMOUNT DUE   $514.00

You are hereby notified that the Massachusetts Motor Vehicle Liability Policy, herein designated, issued to you by the above named company is hereby cancelled in accordance with its terms, such cancellation to become effective at 12:01 A.M. on the date stated above. Section 113A of Chapter 175 of the General Laws, as amended, requires 20 days advance written notice of cancellation. The premiums earned on this policy to the effective date of cancellation will be adjusted in accordance with the terms of this policy. In accordance with the provisions of Section 113A of Chapter 175 of the General Laws, as amended, a notice of this cancellation will be sent to the Registrar of Motor Vehicles of the Commonwealth of Massachusetts on the effective date of cancellation stated above.

**IMPORTANT NOTICE:** Read carefully the information on the reverse side of this notice, which states your legal rights under the compulsory insurance law relative to this cancellation.

By _____
Authorized Signature

10AR1052
Insured Copy

(See Reverse Side)

Tear Here

**RETURN WITH PAYMENT**

OKERE   120300093

COPY TO: COVERALL INS AGENCY INC

SENT TO: PRECIIOUS OKEREKE

ARBELLA MUTUAL INSURANCE COMPANY
P.O. BOX 4033
WOBURN, MA  01888-4033

Policy Number: 4HB 929 476
Producer Code: 44-0859



| CANCELLATION EFFECTIVE | 12-26-2004 |
|---|---|
| Amount Paid $ (If Different) | Late Fee Included in Amount Due   $20.00 |
| Full Amount Due  $759.00 | Minimum Amount Due  $514.00 |

EXHIBIT 02

226 1812379294769 00000075900 00000051400

**COVERALL INSURANCE AGENCY, INC.**
28 BROOKLEY ROAD, JAMAICA PLAIN, MA 02130
(617) 524-8500

## CANCELLATION REMINDER

A cancellation notice has been issued to your auto policy:

DATE DUE: 01-21-05

AMOUNT: $ 6069.020

**If this cancellation has been paid, please disregard this reminder.**

Sincerely,

COVERALL INSURANCE

**EXHIBIT 03**

**COVERALL INSURANCE AGENCY, INC.**
28 Brookley Road
Jamaica Plain, MA 02130




Precious Okereke
P.O. Box 1351
Boston MA 02117

02117+1351

EXHIBIT 03

```
CHUKWU E AZUBUKO    08/04                                      126
PO BOX 1351
BOSTON MA 02117                    Date  12-27-04     5-7017/2110
                                                            502

Pay to the   ARBELLA                              $ 514.00
order of

         Five Hundred & Fourteen                  Dollars

 CITIZENS BANK                  Citizens Circle Account
 Massachusetts

For   INS. PREMIUM                    C. [signature]

⑁ 211070175⑁  130222411 2⑁   0126
```

EXHIBIT 04

# *Champion* Insurance Agency

567 PLEASANT ST. STE. 8
BROCKTON, MA 02301

28 BROOKLEY ROAD
JAMAICA PLAIN, MA 02130

508-583-6700
FAX: 508-583-6702

617-524-8500
FAX: 617-522-3270

December 28, 2004

Precious Okereke
PO Box 1351
Boston, MA 02117

Re:   Arbella Mutual Insurance Policy # 4HB929476

Dear Policyholder,

This is to confirm your visit to this office concerning cancellation of your auto policy effective 12/26/04. Arbella refuses to accept late payment after cancellation and enclosed is your check received on 12/27/04.

We offered to replace the coverage in 12/27/04 with another company (COMMERCE INSURANCE) and you refuse to replace the coverage.

You insisted on leaving a check for Arbella on 12/27/04 which has been refused and your coverage is cancelled effective 12/26/04.

Unless you have obtained coverage elsewhere our vehicle has no insurance coverage.

Sincerely,

CARMEN L. ROSA

EXHIBIT 05

**COVERALL INSURANCE AGENCY, INC.**
28 BROOKLEY ROAD, JAMAICA PLAIN, MA 02130
(617) 524-8500

## CANCELLATION REMINDER

A cancellation notice has been issued to your auto policy:

DATE DUE: 12-26-04

AMOUNT: $ 514.00

HB929476

**If this cancellation has been paid, please disregard this reminder.**

Sincerely,

COVERALL INSURANCE

EXHIBIT 06

e upon deposit-
l notice in the
Checkoway v.
N.E.2d 374, 375
79).

sure designed to
ssary paperwork
) counterpart in
construed by the
olem of excessive
ity of insufficient

that under prior
ice. In Arlington
194 N.E. 725, 726
of exceptions and
ing letter: "I am
Bill of Exceptions
hich I am this day
t at Boston." The
nd rule, Super.Ct.
ced to writing and
en to the adverse
did not fulfill these
ardt, 310 Mass. 466,
te that S.J.C. Rule
"not later than the
ne heretofore strict
attorney the option
a reasonable time

r proof of service of
complaint (cf. Rule
ale in many Districts.
e all formalities as to
arties. If an adverse
ce, the serving party
In order to minimize
a that a simple state-
erjury will suffice to
e: "I certify that on
Answer on plaintiff by
l, directed to his attor-
3 Court Street, Boston,
alties of perjury."

signed to make explicit
proper proof of service
ict it has been properly

setts analogue, although
trongly that filing must
e.g., G.L. c. 231, §§ 13,
n of Rule 5(e) permitting
Massachusetts. It is
tance in which a party's
sary relief might be un-
rst to file his paper with

court, either of its ow
adverse party, has powe
ower necessarily require
ase, nullifying the servi

The "backing" requirement of Rule 5(g) codifies familiar Massachusetts practice. The reference to endorsement for costs deals with the requirement of G.L. c. 231, §§ 42 and 48 that initial papers must, if the plaintiff is not an inhabitant of the Commonwealth, be endorsed before entry by a "responsible" inhabitant, who then becomes liable for costs if the plaintiff is unable or unwilling to pay them. This requirement does not affect the large majority of cases, in which the plaintiff is a resident. Shute v. Bills, 198 Mass. 544, 545, 84 N.E. 862, 863 (1908). An endorsement from the office of an attorney is a sufficient compliance with the statute; the attorney thus becomes liable for the costs. Johnson v. Sprague, 183 Mass. 102, 104, 66 N.E. 422, 423 (1903). Rule 5(g) merely clarifies existing law and clearly implies that if the attorney does not wish to be liable for costs, he may so indicate on the backer of the complaint. In that case, the plaintiff must find someone else to endorse the backer.

### Reporters' Notes—1983

Rule 5(a) has been amended by adding discovery documents to those which must be served upon each of the parties. Absent this provision, one must repeatedly consult the docket to keep abreast of the case and to ascertain whether further discovery is necessary. The Standing Advisory Committee considered the potential for large reproduction and mailing costs in multiple-party litigation; this can be controlled, however, by the court's authority to "otherwise order" which is already present in Rule 5(a). This amendment draws the Massachusetts Rule closer to Federal Rule

### Reporters' Notes—1989

As a result of this amendment, which adds a subparagraph to Rule 5(d), specified discovery documents shall ordinarily no longer "be presented or accepted for filing." The discovery documents that shall not be filed, except by leave of court, notices of taking and transcripts of depositions, requests and responses to requests under Rule 34. In order to give the court access to relevant material when a ruling is required, a party "pressing or opposing any motion or other application for relief may file the document pertinent thereto."

Interrogatories and answers thereto are not covered by this amendment, and must be filed in accordance with Rule

The reasons for this amendment are that some courts have insufficient storage space, and the filing of these documents requires valuable clerical time. This amendment is largely patterned after Superior Court Department Standing Order No. 3-87 (Applicable to the Middlesex) entitled "SUBJECT: PAPERS IN CIVIL ACTIONS WHICH WILL NOT BE ACCEPTED FOR FILING." United States District Court for the District of Massachusetts has a similar local rule entitled "Nonfiling of Discovery Materials." Local Rule 16(g).

There may be a need for the new non-filing requirement in some localities or specific courthouses. The amendment permits the court to require filing "generally," thus authorizing it to order the filing of all discovery, or specified discovery, in all cases or in categories of cases. In other situations when a party, the press, or other person has a good reason to have more discovery materials actually permitted under the amendment. The amendment permits the court, "on motion of a party or concerned citizen, or on its own

motion," to make a different order as to the filing of discovery either "generally or in a specific case."

\* **Publisher's Note:** Superior Court Administrative Directive 90-2, effective December 3, 1990, provides "on a temporary basis and until further notice" for the non-filing of interrogatories and answers in offices of Superior Court Clerks.

### Reporter's Notes—1996

With the merger of the District Court Rules into the Massachusetts Rules of Civil Procedure, differences that had existed in the District Court rules have been eliminated in merged Rule 5. District Court Rule 5(d) had required that papers after the complaint that are required to be served upon a party must be filed with the court either before service or within five days thereafter (as opposed to a reasonable period of time thereafter as set forth in the Rule 5 of the Mass.R.Civ.P.). Also, by merging the two sets of rules, the 1989 amendment to Mass.R.Civ.P. 5(d) regarding the non-filing of specified discovery materials is now clearly applicable in the District Court and Boston Municipal Court.

## RULE 6. TIME

**(a) Computation.** In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute or rule, the day of the act, event, or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule and in Rule 77(c), "legal holiday" includes those days specified in Mass. G.L. c. 4, § 7 and any other day appointed as a holiday by the President or the Congress of the United States or designated by the laws of the Commonwealth.

**(b) Enlargement.** When by these rules or by a notice given thereunder or by order or rule of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order; or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; or (3) permit the act to be done by stipulation of the parties; but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d), and (e), and 60(b), except to the extent and under the conditions stated in them.

**(c) For Motions-Affidavits.** A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 7 days before the time specified for the hearing, unless a different period is fixed by these rules or by

P O Box 1351
Boston – MA 02117-1351

January 27th – 2005

Office of the Clerk
United States' District Court
Mitchell H. Cohen Building & United States Courthouse
Fourth & Coopers Street – Room 1050
Camden – NJ 08101

Dear Sir

**CASE FILING: OKEREKE & AZUBUKO VERSUS ABRELLA MUTUAL INSURANCE COMPANY**

Please, enclosed for your necessary action are three sets of Complaint with exhibits, front page of the Complaint and proceeding commencement forms. We would like you to return the front page of the Complaint copy to us. As you know, it is not intelligent to waste money on postage individually and collectively.

If need be, we would not mind serving the Complaint if provided with the summons.

Indeed, your co-operation is very much appreciated!

Yours truly

CHUKWUMA E AZUBUKO ET AL
Pro Se


Enclosures

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

05cv946

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

RECEIVED-CLERK
U.S. DISTRICT COURT
2006 FEB 17 A

**I. (a) PLAINTIFFS**  PRECIOUS OKEREKE AND CHUKWUMA AZUBUKO

**DEFENDANTS** AMERICA/BELLA MUTUAL INSURANCE COMPANY, ET AL.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
CHUKWUMA E. AZUBUKO
P.O. BOX 1351
BOSTON, MA 02117

Attorneys (If Known) UNKNOWN

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |  | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
|  | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract |  |  | ☐ 863 DIWC/DIWW (405(g)) |  |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act |  | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  | ☐ 530 General |  |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition |  |  |  |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC sections 1011-15 & 1
Brief description of cause: The case associated with insurance discrimination

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1m
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE 1/27/05   SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE